**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| ELLIOT KAPLAN, Individually and Husband, and JEANNE KAPLAN, Wife,<br><br>Plaintiffs,<br><br>v.<br><br>MAYO FOUNDATION, MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH, MAYO ROCHESTER, INC., MAYO CLINIC ROCHESTER, INC., LAWRENCE J. BURGART, and DAVID NAGORNEY,<br><br>Defendants. | Civil No. 07-3630 (JRT/JJK)<br><br><br><br>**MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

James F.B. Daniels, **McDOWELL, RICE, SMITH & BUCHANAN, PC**, 605 West 47th Street, Suite 350, Kansas City, MO 64112; and Peter H. Watson, **PETER H. WATSON & ASSOCIATES, PA**, 2124 Dupont Avenue South, Minneapolis, MN 55405; for plaintiffs.

William R. Stoeri and Heather M. McCann, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402-1498, for defendants.

Plaintiffs Elliot and Jeanne Kaplan brought this action for medical malpractice against defendants Mayo Foundation, Mayo Foundation for Medical Education and Research, Mayo Rochester, Inc., Mayo Clinic Rochester, Inc., Mayo pathologist Lawrence Burgart, and Mayo surgeon David Nagorney (collectively, "Mayo"). The Kaplans also allege loss of consortium, breach of contract, and lack of informed consent.

This case is now before the Court on Mayo's motion for summary judgment.  For the reasons given below, the Court grants in part and denies in part Mayo's motion.

## BACKGROUND

In July 2003, Elliot Kaplan was hospitalized in Missouri after experiencing severe abdominal pain.  Kaplan's Missouri doctors performed a needle biopsy on his pancreas.  Kaplan's pathologist reviewed the pathology slides and determined that Kaplan had cancer of the pancreas.  Kaplan elected to undergo a pancreatoduodenectomy, or "Whipple" procedure, which involves excising portions of the pancreas and stomach as well as the entire pylorus and duodenum.

Kaplan chose to have the procedure performed at Mayo Clinic in Rochester, Minnesota.  Dr. Lawrence Burgart, a Mayo pathologist, reviewed the pathology slides prepared by Kaplan's physicians in Missouri.  Based on his review of the slides, Dr. Burgart diagnosed Kaplan with grade 2 infiltrating pancreatic cancer and scheduled the Whipple procedure.  On August 14, 2003, Dr. David Nagorney, a Mayo surgeon, performed surgery on Kaplan and removed part of Kaplan's pancreas, stomach, and small intestines.  Following surgery, upon further review of the pancreatic tissue, Mayo pathology determined that Kaplan did not in fact suffer from pancreatic cancer.

Elliot and Jeanne Kaplan filed an action for medical malpractice in 2005 in Jackson County, Missouri, alleging that the Missouri doctors, Mayo, and the Mayo doctors were negligent in diagnosing him with pancreatic cancer and in performing an unnecessary surgical operation.  The Kaplans filed and served an affidavit prepared by their medical expert, Dr. Barry M. Shmookler, in support of their claims in the Missouri

action. In January 2007, the Missouri court dismissed without prejudice all of the Mayo defendants, including Drs. Burgart and Nagorney, for lack of personal jurisdiction in Missouri.

Following dismissal of the action in Missouri, the Kaplans, acting *pro se*, filed this medical malpractice action on August 6, 2007. Elliot and Jeanne Kaplan each filed an "affidavit of expert report" along with their complaint, stating that the facts had been reviewed by an expert whose opinions would be admissible at trial. (Docket Nos. 2, 3.) On October 19, 2007, Mayo served on the Kaplans a "demand for expert affidavits" requesting "any and all affidavits as required by Minnesota Statute § 145.682." (Torvik Decl. Ex. 9.) On November 6, 2007, the Kaplans filed and served an additional expert affidavit that was identical to the first two affidavits, but that specifically referenced Minnesota Statute section 145.682, subdivision 2. However, the Kaplans did not file a second expert affidavit required under Minnesota Statute section 145.682, subdivision 4, identifying the experts to be called and summarizing the issues of malpractice and causation. Plaintiffs subsequently retained counsel in this matter on December 17, 2007.

On May 21, 2008, Mayo filed the instant motion for summary judgment, arguing that the Kaplans' failure to file the second required expert affidavit within 180 days of commencement of the action mandates dismissal with prejudice under Minnesota law. *See* Minn. Stat. § 145.682, subd. 2. Shortly after Mayo filed their motion, on May 30, 2008, the Kaplans served on defendants a "curative" affidavit that was completed by Dr. Shmookler and that purported to correct deficiencies with respect to the expert affidavit filed in the Missouri action in 2005. *See* Minn. Stat. § 145.682, subd. 6(c)

(setting forth factors allowing a plaintiff to "cure" deficiencies in a previously filed expert affidavit). The Kaplans contend that the expert affidavit filed in the Missouri action in 2005 constitutes the second expert affidavit required under Minnesota Statute section 145.682, subdivision 4.

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### II. THE KAPLANS' MEDICAL MALPRACTICE CLAIM

Mayo argues that the Kaplans failed to file the second expert affidavit required under Minnesota law in medical malpractice cases, and that this failure mandates dismissal of the Kaplans' negligence claims. In the alternative, Mayo contends that there is no basis for a finding of "excusable neglect" that would allow for an extension of the 180-day filing deadline. The Court addresses each argument in turn.

### A.     Application of Minnesota Statute § 145.682

"In a medical malpractice case where 'expert testimony is necessary to establish a prima facie case,' the plaintiff must meet two requirements." *Anderson v. Rengachary*, 608 N.W.2d 843, 846 (Minn. 2000) (citing Minn. Stat. § 145.682, subd. 2). First, the plaintiff must serve with the summons and complaint an affidavit by the plaintiff's attorney, which states that the attorney has reviewed the facts with an expert and that the expert's opinion is that the defendant deviated from the standard of care and caused injury to the plaintiff. *Id.*; Minn. Stat. § 145.682, subds. 2, 3. Second, the plaintiff must serve an affidavit identifying the experts who will testify at trial, the substance of their testimony, and a summary of the grounds for their opinions.[1] *Rengachary*, 608 N.W.2d at 846; Minn. Stat. § 145.682, subds. 2, 4. This second affidavit must be served upon the defendant "within 180 days after commencement of the suit." Minn. Stat. § 145.682, subd. 2(2).

"Failure to comply with these requirements results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is required to establish a prima facie case." *Teffeteller v. Univ. of Minn.*, 645 N.W.2d 420, 426 (Minn. 2002). While statutory dismissal may have "harsh results" in some cases, "[i]t is the legislative choice to implement the policy of eliminating frivolous medical malpractice lawsuits." *Lindberg v. Health Partners, Inc.*, 599 N.W.2d 572, 578 (Minn.

---

[1] Answers to interrogatories that state the information required by § 145.682, subd. 4, satisfy the second affidavit requirement if they are signed by plaintiff's attorney and by the listed experts and served within 180 days after commencing the action.

1999). In light of this clear legislative purpose, Minnesota courts have "stressed that plaintiffs must adhere to strict compliance with the requirements of Minn. Stat. § 145.682." *Broehm v. Mayo Clinic Rochester*, 690 N.W.2d 721, 726 (Minn. 2005).

The mandatory dismissal provision does, however, allow a plaintiff to "cure" a deficient expert affidavit, provided that (1) a motion to dismiss identifies the claimed deficiencies in the affidavit, (2) the hearing on the motion is at least 45 days after service of the motion, and (3) before the hearing on the motion, the plaintiff serves an amended affidavit correcting the claimed deficiencies. Minn. Stat. § 145.682, subd. 6(c). This "cure" provision was added by the Minnesota Legislature in 2000, "based on the perception that meritorious medical malpractice claims were being dismissed where the expert disclosure affidavit was only missing some technical information that could be corrected." *Brown-Wilbert, Inc. v. Copeland Buhl & Co.*, 732 N.W.2d 209, 217 (Minn. 2007). In addition, even where § 145.682 by its terms mandates dismissal, the plaintiff may avoid dismissal for noncompliance in one of two ways. *Bellecourt v. United States*, 784 F. Supp. 623, 636 (D. Minn. 1992). First, the Court may extend the time for filing the affidavit upon a showing of "excusable neglect." *Id.* Second, the affidavits are not required where the medical malpractice claim does not require expert testimony. *Id.*

Here, the Court agrees with Mayo that, unless the Kaplans can demonstrate an exception for noncompliance, the plain language of § 145.682 mandates dismissal of the Kaplans' medical malpractice claim. Indeed, the Kaplans do not dispute that they failed to file the second required "expert affidavit" in *this* action within 180 days of commencing suit. *See* Minn. Stat. § 145.682, subd. 4. Instead, the Kaplans contend that

the affidavit filed in the Missouri litigation in 2005 – nearly two years *before* they commenced this action – satisfies the second affidavit requirement. The Kaplans argue that the statutory language "within 180 days" necessarily encompasses affidavits filed at any time *prior to* the commencement of the Minnesota action, up until 180 days after commencement of the action. The plain language of § 145.682 does not allow for such a reading, however. The affidavit requirement expressly states that the affidavit must be "serve[d] upon defendant within 180 days *after commencement of the suit*." Minn. Stat. § 145.682, subd. 2 (emphasis added). The Court finds that this statutory language unambiguously requires that the expert affidavit be filed after, and not before, commencement of the lawsuit in Minnesota. *See Lindberg*, 599 N.W.2d at 577-78 (requiring "strict compliance" with § 145.682 and finding the statutory requirements as a whole "uncomplicated and unambiguous"); *Anderson v. Rengachary*, 608 N.W.2d 843, 850 (Minn. 2000) (same); *see also Boatwright v. Budak*, 625 N.W.2d 483, 487 (Minn. Ct. App. 2001) (stating that where the plain language of a statute is unambiguous, that language is conclusive).

The Kaplans also argue that Mayo "agreed" to an extension of the 180-day filing deadline by failing to raise the issue during the Magistrate Judge's Rule 26 scheduling conference. Under Minnesota Statute § 145.682, subdivision 4(b), "the parties or the court for good cause shown, may by agreement, provide for extensions of the time limit" under subdivision 2. The Magistrate Judge's scheduling order dated December 21, 2007, required the parties to make full disclosure of the substance of expert testimony by July 1, 2008. The Kaplans contend that Mayo's failure to object to the July 1, 2008 deadline was

an implicit agreement to an extension of the 180-day filing deadline. However, there is no evidence supporting the Kaplans' contention that Mayo agreed to an extension by failing to object to the scheduling order. Instead, the record shows that Mayo served on the Kaplans a demand for expert affidavits as required under § 145.682, subd. 2, and have contested the adequacy of the Kaplans' affidavit filings throughout this action. As such, the Court concludes that there is insufficient evidence in the record showing that Mayo agreed to an extension of the 180-day filing requirement.

In sum, the Court concludes that application of the plain language of § 145.682 mandates dismissal of the Kaplans' medical malpractice claim, unless the Kaplans can demonstrate some basis for excusing their noncompliance. The Court now turns to that question.

### B. Expert Testimony and Excusable Neglect

A plaintiff in a medical malpractice action may "escape dismissal" for noncompliance with § 145.682 in one of two ways. *Bellecourt*, 784 F. Supp. at 636. First, a plaintiff need not submit the required expert affidavits "if liability may be established without expert testimony." *Id.* Second, the Court may extend the time for filing and serving the affidavits upon a showing of "excusable neglect." *Id.*

The Kaplans first argue that no expert testimony is required for their medical malpractice claim, or for their remaining state law claims, and that their failure to file the second expert affidavit is therefore excused on this basis. The Court disagrees. Minnesota courts hold that "[e]xpert testimony is not necessary where the facts to be determined are within the common knowledge of the jury and where the results of

surgical or medical treatment, viewed in the light of all the circumstances, provide a sufficient evidentiary basis to support an inference of negligence." *Id.* However, "if it would be speculative for the factfinder to decide the issue of negligence without having the benefit of expert testimony on the standard of care, the expert testimony is necessary." *Atwater Creamery Co. v. W. Nat'l Mut. Ins. Co.*, 366 N.W.2d 271, 279 (Minn. 1985). Expert testimony is generally required to prove a prima facie case of medical malpractice, and "is particularly necessary in cases involving a failure to diagnose." *Bellecourt*, 784 F. Supp. at 636. Here, the Kaplans' malpractice claim is based on Mayo's failure to properly diagnose his cancer, and will require a showing that Mayo's examination and interpretation of microscopic pathology slides, and their subsequent diagnosis of pancreatic cancer based on those slides, fell below the appropriate medical standard of care. The Court finds that these issues are beyond the common knowledge of a jury and therefore require expert testimony at trial. *See, e.g.*, *Todd v. Eitel Hosp.*, 237 N.W.2d 357, 361 (Minn. 1975) ("Where, as here, the conduct of the physician involves the complexities of pathological diagnosis, we are not persuaded that nonmedically-trained jurors are competent to pass judgment.").

The Court also finds that the Kaplans' remaining state law claims are derivative of the medical malpractice claim and, therefore, similarly require expert testimony as to Mayo's alleged negligence. The Kaplans allege that Mayo's failure to perform its own biopsy and otherwise properly diagnose Kaplan was a breach of contract and resulted in the Kaplans' loss of consortium. As such, these claims are contingent on a finding of medical malpractice. Further, the Court agrees with Mayo that the Kaplans' "lack of

informed consent" claim is effectively a negligent non-disclosure claim, and not a medical battery claim. Indeed, there appears to be no dispute as to whether Kaplan in fact consented to the Whipple procedure at Mayo. Kaplan alleges instead that Mayo failed to properly disclose the risk that, despite Kaplan's diagnosis, Kaplan might not in fact have cancer, and that the Whipple procedure might turn out to have been unnecessary. The Court finds that these allegations state a claim for negligent non-disclosure. *See Kohoutek v. Hafner*, 383 N.W.2d 295, 300 (Minn. 1986) (finding plaintiff's claim that she had not been properly informed of the risks of a vaginal birth was a claim for negligent non-disclosure, and not battery, since the plaintiff had in fact consented to the birth procedure). Under Minnesota law, expert testimony is necessary for a negligent non-disclosure claim to establish "those risks similarly skilled practitioners under similar circumstances would disclose." *Adolphson v. United States*, 545 F. Supp. 2d 925, 930 (D. Minn. 2008). As such, the Court concludes that expert testimony is required for each of the Kaplans' state law claims, and that the Kaplans' failure to file the second required expert affidavit is therefore not excused as to these claims.

The Kaplans next contend that their failure to properly file the second required affidavit within 180 days was due to "excusable neglect," and that the Court should extend the time to file the affidavit and consider the Shmookler affidavit served by the Kaplans on May 30, 2008 as satisfying the second affidavit requirement. To make a showing of excusable neglect, a plaintiff must demonstrate (1) a reasonable case on the merits, (2) a reasonable excuse for the failure to meet the statutory time limits, (3) that he

has proceeded with due diligence after notice of the statutory time limits, and (4) that no substantial prejudice will result to the defendant from the extension of time. *Rengachary*, 608 N.W.2d at 850. The Court's determination as to whether a plaintiff has shown excusable neglect is discretionary. *See Parker v. O'Phelan*, 414 N.W.2d 534, 537 (Minn. Ct. App. 1987). In making this determination, the Court is mindful of the clear judicial preference that medical malpractice claims be decided on their merits, rather than on a technical or procedural basis. *See Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 192 (Minn. 1990).

The Court finds that the first, third, and fourth factors weigh strongly in favor of a finding of excusable neglect. Based on the Court's review of the affidavits filed in this action, as well as the history of the Missouri litigation – which has produced a partial settlement and is proceeding to trial – the Kaplans have demonstrated a reasonable case on the merits. *Cf. Bellecourt*, 784 F. Supp. at 639 (finding no reasonable case on the merits where affidavits provided insufficient allegations of causation or damages). The Court further finds that the Kaplans proceeded with due diligence after they were given notice of the statutory time limits. A short time after Mayo served its "demand for expert affidavits," the Kaplans filed and served an affidavit of expert review that specifically referenced § 145.682. (Docket No. 10.) While this affidavit did not meet the requirements of the second affidavit of expert review under § 145.682, subd. 2, the Kaplans were acting *pro se* at the time, and their response suggests both confusion as to the statutory requirements and a good faith attempt to comply with Mayo's request. Shortly after Mayo filed its motion for summary judgment, again referencing the affidavit

requirements under § 145.682, the Kaplans, now acting through counsel, filed an expert affidavit that was signed by the Kaplans' medical expert, Dr. Shmookler, and that describes the alleged negligence and its relationship to Kaplan's injury, summarizes the grounds for the expert's opinion, and otherwise meets the expert affidavit requirements set forth under § 145.682, subdivision 4(a).  (Schmookler Aff. Ex. 6.)  In these circumstances, the Court finds that the Kaplans have acted with sufficient due diligence upon receiving notice of the time limits under § 145.682.

With respect to the fourth factor, the Court finds that Mayo will not suffer substantial prejudice from extending the time limit for the Kaplans' affidavit of expert review.  In examining the prejudice to the defendant, courts generally consider the amount of time between the alleged negligence and the filing of the malpractice action. *See, e.g.*, *Bellecourt*, 784 F. Supp. at 640 (finding substantial prejudice where plaintiff filed expert affidavit eleven months after expiration of the 180-day deadline and three and one-half years after the alleged malpractice).  "[A]s time passes, it becomes increasingly difficult for a party to marshal evidence in defense of a claim." *Lewis ex rel. Lewis v. North Mem. Med. Ctr.*, No. C4-02-429, 2002 WL 31303137, at *3 (Minn. Ct. App. Oct. 10, 2002) (unpublished).  Here, however, Mayo has been involved in defending Kaplan's malpractice claim since 2005, when the Kaplans commenced the malpractice action in Missouri.  Mayo was actively involved in the Missouri litigation until January 2007, when the Missouri court dismissed the Kaplans' claims against the Minnesota defendants, without prejudice, for lack of personal jurisdiction.  The Kaplans then filed this action in August 2007.  Because Mayo has been aware of the Kaplans'

malpractice claims since at least 2005, and has engaged in extensive pre-trial litigation in defense of those claims in another forum, the Court finds no substantial prejudice from extending the 180-day time limit for the second expert affidavit under § 145.682.

Finally, the Court considers whether the Kaplans have a reasonable excuse for their failure to file the second required affidavit under § 145.682.  As noted above, the Kaplans filed this action *pro se* after the Missouri court dismissed their claims without prejudice for lack of personal jurisdiction, but before they retained counsel in this matter.  The record shows that the Kaplans attempted to file the required experts affidavit along with their complaint on August 6, 2007.  When served with Mayo's demand for expert affidavits pursuant to § 145.682, the Kaplans promptly filed a new expert affidavit that referenced the Minnesota statute but ultimately failed to meet the requirements of the second affidavit under § 145.682, subdivision 2.  The fact that the Kaplans already had affidavits available from Dr. Shmookler in the Missouri action, and were acting without the benefit of counsel in the Minnesota action, suggests that the Kaplans were confused about the affidavit requirements under Minnesota statute, and made a good faith effort to understand and comply with those requirements.  *See O'Phelan*, 414 N.W.2d at 538 (finding that a plaintiff's confusion as to the filing requirements resulting from plaintiff's case being handled by multiple attorneys supported a finding of reasonable excuse).  Indeed, the Kaplans' counsel stated at oral argument that he had been assured by his client that the requisite affidavits had been filed.  While a more diligent review of the

case file would likely have revealed the deficiency in the expert affidavits,[2] Minnesota courts have counseled against dismissal on procedural grounds where the plaintiff's attorney bears responsibility for the procedural error.  *See Bielke v. Fairview-Univ. Med. Ctr.*, No. A03-4, 2003 WL 22234892, at *6 (Minn. Ct. App. Sept. 30, 2003) (unpublished).  Thus, while this presents a slightly closer issue, the Court finds that the overlapping cases in Missouri and Minnesota, the Kaplans' obvious confusion as to the statutory requirements under Minnesota law, and the Kaplans' *pro se* status provide a reasonable excuse for failing to file the expert affidavit within 180 days of commencing this action.

In sum, the Court finds that the Kaplans have satisfied the four factors required to show reasonable neglect.  Accordingly, the Court concludes that the Kaplans' expert affidavit dated May 30, 2008, satisfies the second affidavit requirement under Minnesota Statute section 145.682, subdivisions 2 and 4.  However, the Court also notes that the expert affidavit opines on medical negligence only with respect to Kaplan's medical *diagnosis*, and does not set forth the issues of malpractice or causation, or a summary of the grounds of the expert's opinion, with respect to the surgical *procedure* performed on Kaplan.  As such, the Court finds that the May 30, 2008 expert affidavit fails to set forth sufficient information under § 145.682, subdivision 4, with respect to Kaplan's negligence claim against Dr. Nagorney, the Mayo surgeon.  Accordingly, the Court

---

[2] The Kaplans retained counsel on December 17, 2007, over four months after they commenced this litigation in August 2007.  Thus, plaintiffs' counsel still had approximately two months after he was retained in which to timely file the second affidavit pursuant to § 145.682, subdivision 2.

grants Mayo's motion for summary judgment as it relates to the Kaplans' claims against Dr. Nagorney. The motion is denied in all other respects.

### ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Docket No. 20] is **GRANTED in part** and **DENIED in part**, as follows:

1. Defendants' motion is **GRANTED** with respect to defendant Dr. David Nagorney. Plaintiffs' claims against Dr. Nagorney are **DISMISSED with prejudice**.

2. Defendants' motion is **DENIED** in all other respects.

DATED: October 27, 2008  
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____  
JOHN R. TUNHEIM  
United States District Judge