# UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

---

ELLIOT KAPLAN and JEANNE
KAPLAN,

              Plaintiffs,

v.

MAYO CLINIC, MAYO FOUNDATION,
MAYO FOUNDATION FOR MEDICAL
EDUCATION AND RESEARCH, MAYO
ROCHESTER, INC., MAYO CLINIC
ROCHESTER, INC., and LAWRENCE J.
BURGART,

              Defendants.

Civil No. 07-3630 (JRT/JJK)

**MEMORANDUM OPINION AND
ORDER ON DEFENDANTS'
MOTIONS IN LIMINE**

---

James F. B. Daniels, **MCDOWELL, RICE, SMITH & BUCHANAN,
PC**, 605 West Forty-Seventh Street, Suite 350, Kansas City, MO  64112,
for plaintiffs.

William R. Stoeri and Andrew B. Brantingham, **DORSEY & WHITNEY
LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN  55402, for
defendants.

This case arises out of a surgery performed on Elliot Kaplan ("Kaplan") by a

surgeon at Mayo Clinic to treat pancreatic cancer, a condition which post-surgery testing

revealed that Kaplan never had.  Kaplan and has wife Jeanne Kaplan (collectively, "the

Kaplans") filed lawsuit against Mayo Clinic and its affiliated entities (collectively,

"Mayo"), as well as Dr. David Nagorney ("Dr. Nagorney"), the doctor who performed

Kaplan's surgery, and Dr. Lawrence J. Burgart ("Dr. Burgart"), the doctor who

erroneously diagnosed Kaplan with pancreatic cancer.  The Court granted summary

judgment in favor of Dr. Nagorney.  The case proceeded to trial against the other defendants on the Kaplans' claims of breach of contract and negligent failure to diagnose. At the close of the Kaplans' case, the Court granted judgment as a matter of law against them on their breach of contract claim.  The jury returned a verdict for Mayo and Burgart on the Kaplans' claim for negligent failure to diagnose, and the Court entered judgment on that verdict.

On appeal, the Eighth Circuit reversed as to the breach of contract claim concluding that a reasonable jury could find that Nagorney, on behalf of Mayo, formed a contract with Kaplan when Nagorney told Kaplan that he would perform an intraoperative biopsy to confirm the cancer diagnosis before proceeding with the surgery. The Eighth Circuit found that Nagorney breached this contract when he failed to perform the promised biopsy.  The Eighth Circuit remanded for further proceedings on the breach of contract claim.

The case is now before the Court on Mayo's motions in limine regarding the presentation of damages evidence at the remand trial on the Kaplans' breach of contract claim.  Mayo requests that the Court (1) preclude the Kaplans from presenting evidence of pain and suffering and emotional damages in support of their breach of contract claim; (2) dismiss Mrs. Kaplan's loss of consortium claim; and (3) limit the Kaplans' evidence of damages to documents and information disclosed prior to the December 30, 2012 disclosure deadline.  For the reasons explained below, the Court will grant Mayo's motion to exclude evidence of pain and suffering and emotional damages and will dismiss Mrs. Kaplan's loss of consortium claim.  The Court will deny Mayo's motion to

limit the Kaplans' evidence to damages information disclosed prior to December 30, 2012.

## BACKGROUND

I.      THE WHIPPLE PROCEDURE

In July 2003, Kaplan was hospitalized in Missouri after experiencing severe abdominal pain.  A CT scan showed that Kaplan had an enlarged pancreas, and doctors in Missouri proceeded to perform a needle biopsy on the pancreas.  A pathologist affiliated with the Missouri hospital reviewed the biopsy and, based on that review, Kaplan was diagnosed with pancreatic cancer.

In August 2003, Kaplan sought a second opinion from Mayo, and sent Mayo the pathology slides that the Missouri doctors had prepared in conjunction with the needle biopsy.  Dr. Burgart, a Mayo pathologist, reviewed the pathology slides and diagnosed Kaplan with grade 2 infiltrating pancreatic cancer.   Another Mayo doctor made an independent diagnosis of pancreatic cancer based on the slides.   Given Dr. Burgart's diagnosis, Dr. Nagorney, a Mayo surgeon, recommended that Kaplan undergo a pancreatoduodenectomy, or "Whipple" procedure, which involves excising portions of the pancreas and stomach as well as the entire pylorus and duodenum.

Kaplan was concerned about the validity of the cancer diagnosis, and expressed this concern to Dr. Nagorney.  When asked if he could confirm the diagnosis during the surgery, Dr. Nagorney allegedly replied that he would do a biopsy of the mass to verify that it was cancer, and if there was no cancer, Dr. Nagorney would not complete the procedure.  On August 14, 2003, Dr. Nagorney performed the Whipple procedure on

- 3 -

Kaplan. Dr. Nagorney did not perform an intraoperative biopsy on Kaplan's pancreatic tissue, and completed the Whipple procedure. After examining the pancreatic tissue post-operatively, Mayo pathologists concluded that Kaplan did not have pancreatic cancer.

## II.    PROCEDURAL HISTORY

In 2007, the Kaplans filed a complaint against Mayo, Dr. Nagorney, and Dr. Burgart, alleging claims for medical malpractice, negligent nondisclosure, breach of contract, and loss of consortium. (*See* Am. Compl., Sept. 17, 2007, Docket No. 4.)

### A.    Summary Judgment and Trial

In 2008, the Court granted summary judgment in favor of Dr. Nagorney, finding that the Kaplans' expert affidavit opined only on medical negligence with respect to Kaplan's medical diagnosis, and not with respect to the surgical procedure performed on Kaplan. (Order at 14-15, Oct. 27, 2008, Docket No. 87.) Consequently, the Court dismissed all of the Kaplans' claims against Dr. Nagorney with prejudice. (*Id.* at 15.)

The case proceeded to trial against the other defendants on claims of breach of contract and negligent failure to diagnose. (*See* Pl.'s Statement of the Case at 5, Mar. 23, 2009, Docket No. 116.) Before conclusion of the trial, the Court granted defendants' motion for judgment as a matter of law on the breach of contract claims. (Minute Entry, Apr. 14, 2009, Docket No. 165.) The Court determined that the breach of contract claim, which arose "out of the diagnosis, care and treatment of [Kaplan]," failed because the Kaplans had not presented expert testimony relating to the standard of care to determine whether there had been a breach. (Tr. at 986-87, July 15, 2010, Docket No. 202.)

After the evidence was presented, the jury returned a verdict for Mayo and Dr. Burgart on the Kaplans' claims for negligent misdiagnosis. (Special Verdict Form at 1, Apr. 15, 2009, Docket No. 166.) Because the jury found that neither Mayo nor Dr. Burgart was negligent in the care or treatment of Kaplan, the jury did not answer any questions regarding damages. (*Id.* at 1-2.) The Court entered judgment on the verdict. (J., Apr. 17, 2009, Docket No. 169.) The Court then denied the Kaplans' motion for a new trial, and the Kaplans appealed. (Order, Apr. 20, 2010, Docket No. 184; Notice of Appeal, May 20, 2010, Docket No. 190.)

### B.   Appeal

On appeal, the Eighth Circuit denied the Kaplans' request for a new trial on their claim for negligent failure to diagnose, and affirmed the Court's judgment with respect to that claim. *Kaplan v. Mayo Clinic*, 653 F.3d 720, 724-26 (8th Cir. 2011). The Eighth Circuit also affirmed the Court's grant of judgment in favor of Dr. Burgart on the Kaplans' breach of contract claim. *Id.* at 727. But the Eight Circuit concluded that the Court erred in granting judgment as a matter of law to Mayo on the Kaplans' breach of contract claim. *Id.* at 729.

Viewing the evidence in the light most favorable to the Kaplans, the Eighth Circuit reviewed the Court's grant of judgment as a matter of law to determine whether any reasonable jury could have found in favor of the Kaplans on their breach of contract claim. *Id.* at 727. To establish a claim for breach of contract the Kaplans were required to show formation of a contract, breach, and resulting damages. *Id.* at 726 (citing *Briggs Transp. Co. v. Ranzenberger*, 217 N.W.2d 198, 200 (Minn. 1974)).

- 5 -

The Eighth Circuit first determined that a reasonable jury could have found that Dr. Nagorney, acting on behalf of Mayo, formed a contract when he allegedly told Kaplan that Dr. Nagorney would perform an intraoperative biopsy to confirm the cancer diagnosis. *Id.* at 727. As consideration "Mr. Kaplan authorized Dr. Nagorney and his colleagues to perform the Whipple procedure and paid them for that surgery." *Id.* Although Dr. Nagorney testified that he never made such a promise, the Eighth Circuit determined that "this testimony merely raises factual question for the jury as to whether there was an agreement." *Id.* The Eighth Circuit also determined that a jury could conclude the contract was breached, because it "is undisputed" that Dr. Nagorney failed to perform an intraoperative biopsy. *Id.* at 728.

With respect to damages, the Eighth Circuit concluded that a reasonable jury could have made the requisite finding of damages. To recover on a breach of contract the damages must have resulted from the breach. *Id.* The Eighth Circuit determined that the Kaplans needed to demonstrate two different steps to show causation as to damages. *Id.* First, the Kaplans "had to offer evidence to support a finding that the intraoperative biopsy results would have been negative for cancer," and the Eighth Circuit concluded the Kaplans had made such a showing. *Id.* Second, the Kaplans would have to establish that "Dr. Nagorney would not have performed the Whipple procedure if the promised biopsy was negative." *Id.* Finally, the Eighth Circuit determined that the Kaplans had "provided sufficient evidence of economic damages resulting from that procedure – though the amount was greatly disputed – to meet the final requirement for making out their contract claim." *Id.*

The Eighth Circuit also found that the Kaplans' breach of contract claim did not simply restate a medical malpractice claim – a claim that would require expert testimony. *Id.* at 729.   The Eighth Circuit noted that "Minnesota law requires plaintiffs to file an expert-witness affidavit in any action against a health care provider for 'malpractice, error, mistake, or failure to cure, whether based on contract or tort,' if 'expert testimony is necessary to establish a prima facie case' in that action."   *Id.* at 728-29 (quoting Minn. Stat. § 145.682)).   The court concluded that expert testimony was unnecessary to support the Kaplans' "perfectly ordinary, garden-variety contract claim," and characterized the claim as "simply that a physician promised to perform a certain procedure and did not do it, resulting in damages to [the Kaplans]."   *Id.* at 729.

Finally, the Eighth Circuit remanded for further proceedings on the Kaplans' breach of contract claim.   *Id.*[1]   In doing so, the court noted that "[t]he parties' briefs do not discuss the question of whether Ms. Kaplan's loss-of-consortium damages are recoverable in a contract action.   This is a matter for exploration on remand should it arise."   *Id.* at 729 n.1.

## C.   Post-Remand Discovery Issues

During an October 2, 2012 phone conference, the Court granted Mayo's request to pursue limited additional discovery into the Kaplans' damages, and set a February 1, 2013 deadline for such discovery.   (Minutes, Oct. 2, 2012, Docket No. 239.)

---

[1] The Kaplans did not appeal the grant of summary judgment in favor of Dr. Nagorney and the Eighth Circuit affirmed the grant of judgment as a matter of law on the breach of contract claim to Dr. Burgart.   Therefore, the breach of contract claim articulated by the Eighth Circuit is only against Mayo on remand.

On October 11, 2012, Mayo served the Kaplans with interrogatories and document requests regarding damages. (*See* Defs.' Mem. in Supp. of Mot. for Sanctions at 1, Jan. 4, 2013, Docket No. 256.) After receiving no response, Mayo brought a motion to compel that discovery. (Mot. to Compel, Nov. 30, 2012, Docket No. 244.) United States Magistrate Judge Jeffrey Keyes granted the motion to compel and ordered the Kaplans to respond to the discovery requests by December 30, 2012. (Order, Dec. 11, 2012, Docket No. 250.) The Magistrate Judge also awarded Mayo its fees and costs incurred in bringing the motion to compel, which order this Court affirmed. (*Id.* at 3; Order, Jan. 3, 2013, Docket No. 252; Order, Feb. 8, 2013, Docket No. 279.)

The Kaplans then twice produced responses to Mayo's October 11, 2012 discovery request. (*See* Eighth Decl. of Heather M. McCann, Exs. K-L, Jan. 4, 2013, Docket No. 257.) The Kaplans responses were incomplete, and did not contain all of the updated information requested by Mayo. (*See id.*, Ex. M.) Due to the inadequacy of the responses, on January 8, 2013, Mayo brought a motion for sanctions and a motion to compel. (Mot. to Compel, Jan. 8, 2013, Docket No. 259.) In the motion, Mayo sought an order, among other things, compelling complete responses and "prohibiting Plaintiffs from introducing into evidence or relying on evidence or argument based on evidence not disclosed or produced prior to the Court's December 30, 2012 deadline." (*Id.* at 1.) Mayo also asked the Court to extend the February 1, 2013 discovery deadline for defendants only. (*Id.*)

The Magistrate Judge granted in part and denied in part Mayo's motion to compel. (Order, Feb. 7, 2013, Docket No. 277.) Of relevance to the present motions, the

Magistrate Judge denied Mayo's request that the Kaplans be prohibited from introducing at trial any evidence not disclosed before December 30, 2012.  (Order, Feb. 7, 2013, Docket No. 277.)  This denial was, however, without prejudice because the Magistrate Judge concluded he was "not going to make that type of evidentiary ruling with respect to the trial of this case," and specifically stated he was not "precluding Judge Tunheim from deciding the issue at the appropriate motion that's made at the time of trial."  (Tr. at 34, Feb. 12, 2013, Docket No. 281.)  The Magistrate Judge granted Mayo's motion to compel the production of signed tax returns, supplemental answers to interrogatories, and a blank authorization for the release of Kaplan's medical records.  (Order, Feb. 7, 2013, Docket No. 277.)  With respect to the extension of time for discovery the Magistrate Judge treated the request as one to continue the trial date, and declined to do so, determining that issue was best left to "counsel to work . . . out between themselves and with . . . Judge Tunheim to determine whether or not any delay of the trial is warranted with respect to that matter."  (Tr. at 37.)

## ANALYSIS

### I.   CONTRACTUAL DAMAGES EVIDENCE

The Court begins by determining whether the Kaplans may present evidence of pain and suffering and emotional distress to prove damages in relation to their breach of contract claim.

A damage award in a breach of contract action is intended to place the non-breaching party "in the position in which he would be if the contract were performed." *Lesmeister v. Dilly*, 330 N.W.2d 95, 102 (Minn. 1983); *see also Jepson v. Gen. Cas. Co.*

*of Wis.*, 513 N.W.2d 467, 472 (Minn. 1994) ("[P]eople should get the benefit of the contracts they enter into, nothing less and nothing more.").  Therefore, a plaintiff may recover those "damages sustained by reason of the breach which arose naturally from the breach or could reasonably be supposed to have been contemplated by the parties when making the contract as the probable result of the breach." *Lesmeister*, 330 N.W.2d at 103; *see also Franklin Mfg. Co. v. Union Pac. R.R. Co.*, 248 N.W.2d 324, 325 (Minn. 1976) ("When the damages are assessed as those which it is reasonable to suppose that the parties had in mind, what is really meant is that the law, aiming at compensation, considers it fair to hold a defendant for damages which as a reasonable man he ought to have foreseen as likely to follow from a breach.  What he in fact foresaw or contemplated is immaterial." (internal quotation marks and alterations omitted)).  Whether damages were reasonably foreseeable at the time of contracting is a question of fact.  *See Franklin Mfg. Co.*, 248 N.W.2d at 326.

"Liability for breach of contract requires proof that damages resulted from or were caused by the breach." *Border State Bank of Greenbush v. Bagley Livestock Exch., Inc.*, 690 N.W.2d 326, 336 (Minn. Ct. App. 2004).  Whether a particular damage resulted from or was caused by a breach of contract is a question for the jury.  *See id.*; *see also Cashman v. Allied Prods. Corp.*, 761 F.2d 1250, 1254 (8th Cir. 1985) (finding that "the jury could reasonably infer from the evidence presented" that the plaintiff had suffered lost profits due to the breach).

Extra-contractual damages, on the other hand, are those which do not flow naturally from the breach and are not reasonably anticipated by the parties to the contract.

*See Wild v. Rarig*, 234 N.W.2d 775, 789 (Minn. 1975).  In Minnesota, extra-contractual damages "are not recoverable for breach of contract except in exceptional cases where the breach is accompanied by an independent tort." *Haagenson v. Nat'l Farmers Union Prop. & Cas. Co.*, 277 N.W.2d 648, 652 (Minn. 1979).  "The accompanying independent tort must be willful." *Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.*, 556 N.W.2d 557, 561 (Minn. 1996).  The rule disallowing extra-contractual damages is designed "to insure that contract law is not swallowed by tort law." *Deli v. Univ. of Minn.*, 578 N.W.2d 779, 782 (Minn. Ct. App. 1998).

A jury found in favor of the defendants on all of the Kaplans' tort claims and the Eighth Circuit affirmed the verdict.  Therefore, there is no independent tort in the present case and the Kaplans cannot recover any extra-contractual damages.  The difficulty, however, is determining whether pain and suffering and emotional distress damages constitute extra-contractual damages in the context of the alleged contract between Mayo and the Kaplans.

Although pain and suffering and emotional distress damages might seem to be the natural proximate cause of a breach in certain types of contracts, Minnesota courts have expanded the prohibition on recovering such damages in a breach of contract action, even where those damages could be reasonably within the contemplation of the parties based on the nature of the contract.  *See Lickteig*, 556 N.W.2d at 561 (categorically defining emotional distress damages as "extra-contractual"); *Francis v. W. Union Tel. Co.*, 59 N.W. 1078, 1081 (Minn. 1894) (denying recovery of emotional distress damages even after recognizing that a contract to send a sensitive telegram relates "wholly to matters of

sentiment or feeling" and therefore breach of such a contract could reasonably be expected to result in mental anxiety); *Deli*, 578 N.W.2d at 781-82 (finding emotional distress damages could not be awarded on a claim for an athletic director's breach of an oral promise not to view a videotape that contained footage of the plaintiff's sexual encounter with her husband, despite the "inherently personal nature" of the contract); *Born v. Medico Life Ins. Co.*, 428 N.W.2d 585, 587, 590 (Minn. Ct. App. 1988) (stating that pain and suffering were extra-contractual damages even though the breach alleged was for a contract to provide medical insurance).

Instead of examining solely the foreseeability of certain damages to determine whether such damages may be extra-contractual, Minnesota law appears to restrict recoverable contractual damages more generally to those that are pecuniary in nature. The Minnesota Supreme Court has long held that regardless of the "nature of the contract . . . [t]he law looks only to the pecuniary value of the contract, and for its breach awards only pecuniary damages." *Francis*, 59 N.W. at 1081; *see also Beaulieu v. Great N. Ry. Co.*, 114 N.W. 353, 356 (Minn. 1907) (explaining that in the absence of an independent tort, damages for breach of contract "must be limited to the actual pecuniary loss naturally and necessarily flowing from the breach"). Therefore, in addition to requiring that contractual damages be those which flow directly from the breach and were within the contemplation of the parties, the Minnesota Supreme Court has held that contractual damages are those which "may be measured and determined by some definite rule or standard of compensation." *Beaulieu*, 114 N.W. at 355. Thus damages that are "incapable of definite

calculation" and "must necessarily rest in the discretion of the jury" are extra-contractual and are recoverable only in tort actions. *Id.*

It does not appear that the Minnesota Supreme Court has ever precisely addressed whether pain and suffering and emotional distress damages are recoverable for breach of a contract between a physician and his patient. Where the Court is faced with an undecided question of Minnesota law, its role is to predict how the Minnesota Supreme Court would resolve the question. *See Spine Imaging MRI, L.L.C. v. Country Cas. Ins. Co.*, Civ. No. 10-480, 2011 WL 379100, at *6 (D. Minn. Feb. 1, 2011) (citing *Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.*, 387 F.3d 705, 715 (8th Cir. 2004)).

Although many courts have recognized that "a surviving patient can maintain a cause of action for breach of an express or implied promise against a physician," *Zostautas v. St. Anthony De Padua Hosp.*, 178 N.E.2d 303, 307 (Ill. 1961), courts have disagreed about whether those surviving patients can recover damages for pain and suffering or emotional distress. Some courts have held that where "liability is predicated on the failure to perform an agreed undertaking rather than upon negligence . . . the damages are restricted to the payments made, the expenditure for nurses and medicines, or other damages that flow naturally from the breach (thereof), and do not include the patient's pain and suffering as in malpractice actions." *Id.* at 305 (citations and internal quotation marks omitted).[2] Courts limiting recoverable damages for breach of a contract

---

[2] *See also Sangdahl v. Litton*, 69 F.R.D. 641, 645 (S.D.N.Y. 1976) ("If the physician fails to perform the original operation which he undertook, it would also seem that an action for breach of contract ought to lie. If such an action does lie, however, contract damages, as opposed to tort damages, will be recovered. This would exclude recovery for pain and

(Footnote continued on next page.)

by a physician have done so in part to maintain a clear distinction between tort and contract claims, emphasizing that "[a]lthough . . . actions of malpractice and breach of contract may arise out of the same transaction, they are distinct as to theory, proof and damages." *Id.* at 304.

Other courts, however, when faced with a contract between a physician and patient have applied the general rule of contract law that a plaintiff may recover damages that were within the contemplation of the contracting parties.   In *Stewart v. Rudner*, for example, the court allowed the plaintiff to recover mental anguish and pain and suffering damages in a contract in which a physician had agreed, but failed to perform a Caesarean section, causing the death of the plaintiff's unborn child.   84 N.W.2d 816, 821, 824 (Mich. 1957).   The court focused on the underlying subject matter of the parties' agreement, reasoning that this particular contract was "concerned not with trade and commerce but with life and death," a breach of which would "inevitably and necessarily result in mental anguish, pain and suffering." *Id.* at 824.   Therefore, the court held that "[i]n such cases the parties may reasonably be said to have contracted with reference to the payment of damages [for mental anguish and pain and suffering] in the event of breach.   Far from being outside the contemplation of the parties they are an integral and

_____

(Footnote continued.)

suffering." (internal quotation marks omitted)); *Carpenter v. Moore*, 322 P.2d 125, 126-27 (Wash. 1958) ("The amount paid, or promised to be paid, is the consideration for the promise of a professional man that the patient or client will be satisfied with his work. . . . However, damages for pain and suffering, ordinarily predicated on negligence or malpractice, are not within the contemplation of the parties for the breach of a promise to do work to the satisfaction of a patient or client in the absence of some negligence or fault.").

inseparable part of it." *Id.*; *see also Sullivan v. O'Connor*, 296 N.E.2d 183, 188-89 (Mass. 1973) ("It is all a question of the subject matter and background of the contract, and when the contract calls for an operation on the person of the plaintiff, psychological as well as physical injury may be expected to figure somewhere in the recovery, depending on the particular circumstances.").

Based upon Minnesota's general law governing contractual damages, the Court concludes that the Minnesota Supreme Court would likely follow the *Zostautas* court's approach, and preclude the Kaplans from recovering pain and suffering and emotional distress damages based upon the breach of any contract formed with Mayo.  Although it is possible that pain and suffering and emotional distress could have reasonably been within the contemplation of Mayo and the Kaplans based upon the nature of the contract at issue, the Minnesota Supreme Court has expressly rejected the approach used in *Stewart* and *Sullivan* of examining the underlying nature of the contract to determine whether damages such as those for mental anguish and pain and suffering are recoverable.  *See Francis*, 59 N.W. at 1081 (refusing to "allow damages for injury to the feelings resulting from a breach of contract – even one [relating wholly to matters of sentiment or feeling]").  Instead Minnesota law appears to limit damages in a contract action to those capable of measurement by "some definite rule or standard of compensation," and "to the actual pecuniary loss naturally and necessarily flowing from the breach."  *Beaulieu*, 114 N.W. at 356.[3]  The Kaplans' pain and suffering as well as any emotional distress they may have

---

[3] Additionally, whether a plaintiff seeks damages for pain and suffering has been a key factor relied upon by Minnesota courts in determining whether a particular action is one

(Footnote continued on next page.)

suffered are damages that, although recoverable in tort, do not appear to be recoverable in a breach of contract action under Minnesota law.[4]  Therefore, the Court will preclude the Kaplans from presenting evidence of pain and suffering or emotional distress at trial to support their breach of contract action.[5]

The Court's conclusion that the Kaplans may not recover damages for pain and suffering or emotional distress is further supported by the Eighth Circuit's opinion in this

_____
(Footnote continued.)

sounding in contract or tort for purposes of deciding whether an action disguised as a breach of contract is actually attempting to recover for a tort that has been abolished.  *See R.E.R. v. J.G.*, 552 N.W.2d 27, 29 (Minn. Ct. App. 1996) (citing with approval a case holding that "plaintiff could not maintain his action for breach of contract because the claimed damages, pain and suffering, demonstrated his reliance on a prohibited tort theory." (citation omitted)).   That Minnesota courts distinguish between contract and tort claims based on the presence of pain and suffering damages further suggests that the Kaplans may not recover such damages on their breach of contract claim.

[4] A sole exception located by the Court is *Sargent v. Mason*, 112 N.W. 255, 257 (Minn. 1907), which suggested that pain and suffering damages may be recoverable in an action for breach of a contract to furnish heat to plaintiff's residence.  *Sargent* appears to be somewhat at odds with the overall tenor of Minnesota law described above.

[5] Mayo makes two additional arguments in support of its position that Kaplan cannot recover pain and suffering or emotional distress damages in this case.  First, Mayo argues that Dr. Nagorney would have proceeded with the Whipple procedure even if an intraoperative biopsy had been performed and returned a negative result.  Second, Mayo argues that Kaplan's alleged post-surgery symptoms are not post-Whipple symptoms or complications but are instead the product of some other medical condition.  Neither of Mayo's arguments is directly relevant to the instant motion, because both merely go to causation, not to whether the damages Kaplan seeks are contractual or extra-contractual.  As explained above "[l]iability for breach of contract **requires proof that damages resulted from or were caused by the breach**," and whether particular damages resulted from a breach is a question for the jury.  *Border State Bank of Greenbush v. Bagley Livestock Exchange, Inc.*, 690 N.W.2d 326, 336 (Minn. Ct. App. 2004) (emphasis added).   Additionally, the Eighth Circuit specifically identified Mayo's first contention as a question for the jury.  *Kaplan*, 653 F.3d at 728.  Therefore, the parties are clearly allowed to present evidence at trial regarding whether Dr. Nagorney's breach (failing to do a biopsy) caused any of the Kaplans' claimed damages.  But this conclusion does not answer the question of whether the Kaplans may seek damages for pain and suffering and emotional distress as a matter of law.

case.  The Eighth Circuit specifically determined that the Kaplans had "provided sufficient evidence of **economic damages** resulting from [the Whipple] to meet the final requirement for making out their contract claim.  *Kaplan*, 653 F.3d at 728 (emphasis added).  Furthermore, the Court notes that its conclusion is in keeping with the purpose of limiting extra-contractual damages, to wit: preserving the boundary between contract and tort law.  *See Deli*, 578 N.W.2d at 782.  The Kaplans already brought tort claims against the defendants in this case.   The jury rejected those claims, and the Eighth Circuit affirmed.  The Kaplans cannot use their remaining breach of contract claim to attempt to recover all of the damages that may have been recoverable in those tort claims.  Although allegedly based on some of the same conduct, the Kaplans' breach of contract action is distinct "as to theory, proof and damages," *Zostautas*, 178 N.E.2d at 304, and therefore the Kaplans may not recover damages for pain and suffering and emotional distress.

## II.     LOSS OF CONSORTIUM

Under Minnesota law, a spouse of a person "injured as a direct result of the negligence of another shall have a right of action against that same person for her loss of consortium," provided the injured person recovers against the tortfeasor and the spouse joins his or her claim in the same action as the injured person.  *Thill v. Modern Erecting Co.*, 170 N.W.2d 865, 869 (Minn. 1969).   "Loss of consortium is a derivative claim, failure of the tort claims underlying the loss of consortium claim will preclude recovery." *Schanhaar v. EF Techs, Inc.*, Civ. No. 08-5382, 2010 WL 4056045, at *4 (D. Minn. Oct. 14, 2010); *see also Peters v. Bodin*, 65 N.W.2d 917, 922 (Minn. 1954).

Although it does not appear that Minnesota courts have explicitly rejected a claim for consortium brought as a derivative to a breach of contract claim, the Kaplans have not cited to, nor has the Court found any Minnesota cases that have allowed such a claim.[6] The majority of other jurisdictions have concluded that a loss of consortium claim cannot derive from a breach of contract action, and the Court can identify no reason why the Minnesota Supreme Court would hold differently. *See, e.g.*, *Riley v. Champion Int'l Corp.*, 973 F. Supp. 634, 651 (E.D. Tex. 1997) ("[A] spouse's derivative claims may not rest upon a simple breach of contract claim."); *Perrin v. Hilton Int'l Inc.*, 797 F. Supp. 296, 302 (S.D.N.Y. 1992) ("[A] claim for loss of consortium cannot be derived from a spouse's breach of contract claim."); *Covert v. Allen Grp., Inc.*, 597 F. Supp. 1268, 1270 (D. Colo. 1984) ("A cause of action for loss of consortium cannot arise out of a cause of action for breach of contract or the ancillary theory of promissory estoppel."). Because

---

[6] The Kaplans cite to *Togstad v. Vesely, Otto, Miller & Keefe*, 291 N.W.2d 686 (Minn. 1980), in support of their argument that the Minnesota Supreme Court would allow a loss of consortium claim for a breach of contract action. *Togstad* involved a claim for legal malpractice which arose from the attorney's determination that the plaintiff did not have a viable medical malpractice claim. *Id.* at 689-90. A jury found in plaintiff's favor on the legal malpractice claim, determining that the plaintiff would have been successful in the underlying medical malpractice claim, because a doctor's negligence had resulted in the plaintiff's paralysis. *Id.* at 692. The court declined to determine "whether a tort or contract theory is preferable for resolving the attorney-client relationship question presented by this appeal," but upheld the jury's award to the injured plaintiff's wife for loss of consortium. *Id.* at 693, 695. The Kaplans suggest that because the court declined to decide whether the legal malpractice action was based in contract or tort, the opinion can be read as allowing loss of consortium claims based upon breach of contract. The Kaplans' reading of *Togstad* is overly broad. *Togstad* involved the unique circumstances of a legal malpractice action overlying a medical malpractice action. The plaintiff was entitled to recover on a loss of consortium claim that was based on the underlying medical malpractice tort. Therefore, the *Togstad* opinion does not address the question of whether the *Togstad* plaintiffs could have maintained a loss of consortium claim if the underlying medical malpractice action had instead been based upon breach of a contract by the physician.

loss of consortium is a claim that is derivative of a tort, the Court concludes that Mrs. Kaplan cannot maintain a loss of consortium claim based upon the breach of contract claim remaining in this matter.

In its motion, Mayo appears to be requesting dismissal of Mrs. Kaplan's claim rather than simply the exclusion of evidence in support of that claim. Normally "motions in limine are not proper procedural devices for the wholesale disposition of theories or defenses." *In re Levaquin Prods. Liab. Litig.*, Civ. No. 08-5743, 2010 WL 4676973, at *3 (D. Minn. Nov. 9, 2010) (internal quotation marks omitted); *see also CardioVention, Inc. v. Medtronic, Inc.*, 483 F. Supp. 2d 830, 842 (D. Minn. 2007) (declining to decide a dispositive motion contained within a motion in limine). However, the Court finds that it is proper to dismiss Mrs. Kaplan's claim at this time because requiring Mayo to file a separate motion to dismiss would "only prolong a meritless position," and would require the parties to reargue the validity of the loss of consortium claim, which has been fully briefed in connection with the motion in limine. *See SPX Corp. v. Bartec USA, LLC*, No. 06-14888, 2008 WL 3850770, at *3 (E.D. Mich. Aug. 12, 2008) (deciding whether summary judgment should be granted on a claim, even though the issue was raised in a motion in limine).[7] Moreover, given the unique procedural posture of this case on remand, it does not appear that Mayo is attempting to use a motion in limine to

---

[7] *See also Allan Block Corp. v. Cnty. Materials Corp.*, Civ. No. 05-2879, 2009 WL 1955588, at *7-11 (D. Minn. July 6, 2009) (considering on a motion in limine whether plaintiff's breach of contract claims were barred as a matter of law by res judicata); *Metro. Enter. Corp. v. United Techs. Int'l Corp.*, No. Civ. 3:03CV1685, 2006 WL 522384, at *2 (D. Conn. Feb. 27, 2006) (converting a motion in limine to a motion to dismiss).

circumvent a dispositive motion deadline.  Therefore, the Court will dismiss Mrs. Kaplan's claim for loss of consortium, and preclude the Kaplans from presenting evidence in support of this claim at trial.

## III.    EVIDENCE NOT PRODUCED BEFORE DECEMBER 30, 2012

Mayo also requests that the Court exclude all evidence of damages not produced by the Kaplans prior to the December 30, 2012 deadline set by the Magistrate Judge. Although this argument was presented to the Magistrate Judge, the Magistrate Judge specifically declined to rule, and left this determination for this Court.

Federal Rule of Civil Procedure 37 provides that where a party "fails to obey an order to provide or permit discovery" a court is permitted to "prohibit[] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."  Fed. R. Civ. P. 37(b)(2)(A).  "The district court is afforded great latitude in imposing sanctions for failure to comply with discovery orders[.]"  *Hazen v. Pasley*, 768 F.2d 226, 229 (8th Cir. 1985).

Mayo confirmed at oral argument on the present motion that it has received all requested discovery regarding the Kaplans' claimed damages.  The trial is not set to begin until this fall, giving Mayo ample time to review the Kaplans' relatively small amount of new damages information.  Although this information is undoubtedly important, it cannot be that the slight delay in receiving this information from the Kaplans will or has seriously hampered Mayo's ability to prepare for this trial.  The Court concludes that precluding the Kaplans from presenting updated evidence of damages would be an overly harsh sanction given the nature of the information and the timeline of

this case.  Thus, the Court will allow evidence produced after December 30, 2012, to be used at trial, and the Court cautions counsel to comply with the Federal Rules and the Court's orders in the future.[8]

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendants' Motion in Limine [Docket No. 269] is **GRANTED in part** and **DENIED in part** as follows:

      a.      To the extent Defendants' motion seeks to preclude Plaintiffs from presenting evidence at trial of pain and suffering or mental anguish in support of their claim for breach of contract, the motion is **GRANTED**;

      b.      To the extent Defendants' motion seeks to preclude Plaintiffs from presenting evidence at trial in support of their claim for loss of consortium, the motion is **GRANTED**;

      c.      Plaintiffs' claim for loss of consortium (Count II) is **DISMISSED with prejudice**; and

---

[8] In a similar vein, Mayo filed a motion to strike the Kaplans' "Bench Brief Regarding Damages" that was filed the day before the hearing on Mayo's motions in limine.  The Bench Brief outlines the arguments that Kaplans' counsel intended to make during the oral argument. Although the Bench Brief was not authorized by the Court or the Local Rules, the Court is not required to strike noncompliant pleadings, but retains discretion to do so as a sanction.  Because the Bench Brief essentially reiterates the Kaplans' arguments presented in its initial response to the motions in limine, its filing caused Mayo no prejudice, and the Court finds it unnecessary to strike the pleading.  As such, it will deny Mayo's motion, though it reminds counsel to carefully abide by the Local Rules in the future.

d.      To the extent Defendants' motion seeks to preclude Plaintiffs from present evidence at trial that was disclosed to Defendants after the December 30, 2012 deadline, the motion is **DENIED**.

2.      Defendants' Motion to Strike Pleading [Docket No. 300] is **DENIED**.


DATED:  May 28, 2013                        _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                            JOHN R. TUNHEIM
                                              United States District Judge