UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| ELLIOT KAPLAN and JEANNE KAPLAN, | Civil No. 07-3630 (JRT/JJK) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING MOTION TO AMEND COMPLAINT** |
| MAYO CLINIC, MAYO FOUNDATION, MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH, MAYO ROCHESTER, INC., MAYO CLINIC ROCHESTER, INC., and LAWRENCE J. BURGART, | |
| Defendants. | |

William D. Harper, Paul D. Peterson, and Lori L. Barton, **HARPER & PETERSON, PLLC,** 3040 Woodbury Drive, Woodbury, MN  55129, for plaintiffs.

William R. Stoeri, Heather M. McCann, and Andrew B. Brantingham, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN  55402, for defendants.

Plaintiffs Elliot and Jeanne Kaplan ("Plaintiffs" or "the Kaplans") filed this action in 2007 against Mayo Clinic and its affiliated entities (collectively, "Mayo Clinic"), Dr. David Nagorney ("Dr. Nagorney"), and Dr. Lawrence J. Burgart ("Dr. Burgart"). The case proceeded to trial against Mayo Clinic and Dr. Burgart on claims for breach of contract and negligent failure to diagnose.[1]  The Court granted judgment as a matter of law against the Kaplans on their breach of contract claim, and the jury returned a verdict against the Kaplans on their tort claim.  The Kaplans appealed, and the Eighth Circuit

---

[1] The Court granted summary judgment in favor of Dr. Nagorney on October 27, 2008. (Mem. Op. & Order on Defs.' Mot. for Summ. J., Oct. 27, 2008, Docket No. 87.)

reversed as to the Court's grant of judgment as a matter of law on the breach of contract claim. The Eighth Circuit issued a narrow remand solely for further proceedings on the breach of contract claim.

This case is now before the Court on the Kaplans' motion for leave to amend their complaint to include a claim for battery. The Kaplans allege that the parties' trial briefs and the testimony at trial support a finding that Dr. Nagorney promised to perform an intraoperative biopsy to confirm the cancer diagnosis prior to proceeding with surgery on Elliot Kaplan, but he performed the surgery without first taking a biopsy and, therefore, without obtaining Elliot Kaplan's consent. Because a battery claim falls outside the narrow scope of the Eighth Circuit's remand in this case, and because the Court concludes that amendment would likely prejudice Mayo Clinic and Dr. Burgart ("the Defendants") when there was no good reason for the Plaintiffs' delay in seeking leave to amend, the Court will deny the Plaintiffs' motion.

## BACKGROUND

### I.   ELLIOT KAPLAN'S SURGERY

Elliot Kaplan was hospitalized in Kansas City, Missouri in July 2003 for severe abdominal pain. Kaplan's internist, Dr. John Dunlap, expressed concern about the results of a CT scan of Kaplan's pancreas and ordered a needle biopsy. Based on the CT scan and needle biopsy results, Dr. Dunlap concluded that Kaplan had pancreatic cancer. After speaking with his internist and his father, Kaplan decided to travel to Mayo Clinic in Rochester, Minnesota, for further information and treatment in August 2003.

At Mayo Clinic, pathologist Dr. Burgart reviewed the slides from the Missouri needle biopsy and diagnosed Kaplan with grade 2 infiltrating pancreatic cancer. Kaplan then met with Dr. Nagorney, a Mayo Clinic surgeon, who recommended that Kaplan undergo a pancreatoduodenectomy, or "Whipple" procedure, as soon as possible. Kaplan questioned whether the cancer diagnosis was accurate and communicated this uncertainty to Dr. Nagorney.

The parties dispute the sequence of events that immediately followed. The Kaplans allege that Dr. Nagorney promised to do an intraoperative biopsy to verify that the mass in Kaplan's pancreas was cancer. The Kaplans' understanding was that if the biopsy showed that the mass was cancer, Dr. Nagorney would proceed with the Whipple procedure. They believed that if the biopsy was negative or if it showed that the cancer was too advanced, Dr. Nagorney would not proceed with the Whipple. Kaplan maintains that he did not agree to undergo the Whipple procedure until Dr. Nagorney said he would do an intraoperative biopsy to confirm the cancer status of the pancreatic mass.

Dr. Nagorney denies that he agreed to intraoperatively biopsy Kaplan's pancreas. He acknowledges that he performed biopsies of areas outside the pancreas throughout the surgery to determine whether the cancer had spread. Mayo Clinic argues that it would have been illogical for Dr. Nagorney to perform an intraoperative biopsy of the pancreas, however, because the positive preoperative biopsy would trump a negative intraoperative biopsy. As long as the cancer had not already spread too far, Dr. Nagorney contends that he would have proceeded with the Whipple procedure.

## II.  PROCEDURAL HISTORY

In April 2009, the parties tried this case before a jury.  The Kaplans pursued claims of negligent failure to diagnose and breach of contract, based on Dr. Nagorney's alleged promise to perform an intraoperative biopsy to verify whether the pancreatic mass was cancer before proceeding with the Whipple procedure.  At the close of the Plaintiffs' case, the Court granted judgment as a matter of law on the breach of contract claim, and at the end of the trial, the jury returned a verdict in the Defendants' favor on the negligent failure to diagnose claim.  The Kaplans appealed.

On appeal, the Eighth Circuit affirmed the jury's verdict on the claim for negligent failure to diagnose but "reverse[d] the grant of JAML to Mayo on the Kaplans' claim for breach of contract and remand[ed] for further proceedings" on that claim.  *Kaplan v. Mayo*, 653 F.3d 720, 729 (8th Cir. 2011).  The Court held a bench trial on the Kaplans' breach of contract claim on February 2, 2015.  On February 3, the Kaplans moved for leave to amend their complaint to add a claim for battery.  (Mot. for Leave to Amend Compl. to Add a Claim for Battery, Feb. 3, 2015, Docket No. 371.)  This matter is now before the Court on the Kaplans' motion.

## ANALYSIS

## I.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 15(b)(2), if the parties do not raise an issue in the pleadings but it "is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings.  A party may move – at any time, even after judgment – to amend the pleadings to conform them to the evidence and to raise an

unpleaded issue." *Id.* "The goal of Rule 15(b) is to promote the objective of deciding cases on the merits rather than on the relative pleading skills of counsel." *Am. Family Mut. Ins. Co. v. Hollander*, 705 F.3d 339, 348 (8th Cir. 2013) (citing *Foman v. Davis*, 371 U.S. 178, 181-82 (1962)).  Where the parties have implicitly or explicitly consented to try an issue, "amendments under the rule are to be 'liberally granted where necessary to bring about the furtherance of justice and where the adverse party will not be prejudiced.'" *Id.* (quoting *Am. Fed'n of State, Cnty. & Mun. Emps. v. City of Benton*, 513 F.3d 874, 883 (8th Cir. 2008)).  "[P]rejudice to the defendant is still the touchstone" of a motion to amend analysis.  *Chestnut v. St. Louis Cnty., Mo.*, 656 F.2d 343, 349 (8th Cir. 1981).

## II.   AMENDMENT TO INCLUDE A CLAIM FOR BATTERY

The Kaplans seek to amend their complaint to include a claim for battery, arguing that the issue of medical battery was tried with the implied consent of the parties.  They base this request for leave to amend in part on Mayo Clinic's admission in its trial brief that Dr. Nagorney performed a Whipple surgery on Elliot Kaplan without first performing an intraoperative biopsy of the pancreas.  Mayo Clinic's implied consent is further apparent, the Kaplans claim, from the fact that Mayo Clinic did not object at trial when the Kaplans testified as to their understanding of the conditions under which the surgery would be performed.  After reviewing the parties' arguments, the Court concludes that amendment to include a claim for battery would be inappropriate in light of the narrow scope of the Eighth Circuit's remand and the likely prejudice to Mayo Clinic.

"Implied consent exists where a party has actual notice of an unpleaded issue and ha[s] been given an adequate opportunity to cure any surprise resulting from the change in the pleadings." *Hollander*, 705 F.3d at 348 (internal quotation marks omitted). Consent "may be implied when evidence relevant to an unpleaded issue has been introduced at trial without objection." *Id.* (internal quotation marks omitted); *Shen v. Leo A. Daly Co.*, 222 F.3d 472, 479 (8th Cir. 2000) ("Consent may be implied if evidence to support the claim was introduced at trial without objection.").

The Kaplans argue that evidence relevant to the issue of a medical battery was introduced during the retrial, without objection by Mayo Clinic. In Minnesota, "[m]edical battery consists of 'an unpermitted touching, in the form of a medical procedure or treatment.'" *Doe v. Tsai*, No. 08-1198, 2008 WL 4949156, at *3 (D. Minn. Nov. 17, 2008) (quoting *Kohoutek v. Hafner*, 383 N.W.2d 295, 299 (Minn. 1986)). "In battery, the focus is on the patient's right to be free from a touching that is of a substantially different nature and character from that to which he or she has consented." *Kohoutek*, 383 N.W.2d at 299. A patient who consents to an operation "enters into a contract authorizing his physician to operate to the extent of the consent given, but no further." *Mohr v. Williams*, 104 N.W. 12, 15 (Minn. 1905), *overruled in part on other grounds by Genzel v. Halvorson*, 80 N.W.2d 854, 859 (Minn. 1957). The Kaplans contend that the testimony of Elliot Kaplan, Jeanne Kaplan, and Dr. Nagorney, all indicate that Dr. Nagorney performed a medical procedure on Elliot Kaplan without his consent. More specifically, that Elliot Kaplan only consented to undergo a Whipple procedure if an intraoperative biopsy confirmed that his pancreatic mass was cancer, but

Dr. Nagorney performed the Whipple procedure without first taking a biopsy of the pancreatic mass.

The Court will exercise its discretion to preclude the Kaplans from amending their complaint to add a battery claim at this stage in the litigation for two reasons.  First, a battery claim does not fit within the scope of the Eighth Circuit's remand.  On appeal, the Eighth Circuit issued a narrow remand in this case, with the only remaining issue being the Court's grant of judgment as a matter of law on the Kaplans' breach of contract claim.  *Kaplan*, 653 F.3d at 723, 729 (affirming the judgment in favor of Defendants on all issues except "revers[ing] the grant of [a judgment as a matter of law] to Mayo on the Kaplans' claim for breach of contract and remand[ing] for further proceedings.").  A tort claim for battery falls well outside the question of whether the Kaplans ought to prevail on their contract claim and what amount of damages, if any, they are entitled to recover.  The Court will not expand the limited scope of the Eighth Circuit's remand to allow the Kaplans to pursue a new case theory.

Second, opening the door to new claims at this stage would likely prejudice Mayo Clinic.  Given the Eighth Circuit's narrow remand, the Court limited the types of damages the Kaplans would be allowed to pursue.  The Court expressly "preclude[d] the Kaplans from presenting evidence of pain and suffering or emotional distress at trial to support their breach of contract action."  (Mem. Op. & Order on Defs.' Mots. in Limine at 16, May 28, 2013, Docket No. 310.)  The Court also explicitly ruled that the Kaplans could not assert a loss of consortium claim on remand, because such a claim is derivative of a tort action and only a breach of contract claim remains in this litigation.  (*Id.* at 17-

20.)  Relying on these rulings, Mayo Clinic prepared and presented a case at trial tailored to combatting the confined universe of breach of contract damages.  Medical battery, a claim sounding in tort, would expand that universe of damages beyond the boundaries set by the Court with respect to the Kaplans' breach of contract claim.  *See Kinikin v. Heupel*, 305 N.W.2d 589, 593 (Minn. 1981) (explaining that plaintiffs may seek punitive damages for medical battery claims); *Montgomery v. Bazaz-Seghal*, 798 A.2d 742, 750 (Pa. 2002) (finding that mental and emotional damages are recoverable under a theory of medical battery).

Irrespective of whether the damages would be different for a tort claim than for a breach of contract action, the Kaplans argue that Mayo Clinic implicitly consented to trying a battery claim by not objecting to testimony about Dr. Nagorney's alleged promise to perform an intraoperative biopsy before proceeding with the Whipple procedure.  The Court finds, however, that Mayo Clinic was not on notice of the need to object, because that evidence was highly relevant to the Kaplans' breach of contract claim.  "[A] district court is not required to grant a motion to amend on the basis of some evidence that would be relevant to the new claim if the same evidence was also relevant to a claim originally pled."  *Gamma-10 Plastics v. Am. President Lines, Ltd.*, 32 F.3d 1244, 1256 (8th Cir. 1994).

In this case, the evidence supporting a battery claim substantially overlaps with the evidence supporting the Kaplans' breach of contract claim.  The Kaplans base their battery claim on the testimony of the Kaplans and Dr. Nagorney as to whether Dr. Nagorney promised to take an intraoperative biopsy before performing the Whipple

procedure on Elliot Kaplan and then subsequently proceeded with the procedure without taking the biopsy. All of this testimony is also relevant to the breach of contract claim the Kaplans originally pled. Indeed, the Eighth Circuit explained that, for the Kaplans to prevail on their breach of contract claim, they would need to introduce evidence that (1) had an intraoperative biopsy been performed, its "results would have been negative for cancer," and (2) "Dr. Nagorney would not have performed the Whipple procedure if the promised biopsy was negative." *Kaplan*, 653 F.3d at 728. Thus, the Court finds that the Defendants were not on notice that the Kaplans would allege a battery claim at this stage based on that evidence. Rather, Mayo Clinic was "entitled to rely upon the allegations set forth in the Plaintiff[s'] Complaint," which did not include a battery claim. *Beattie v. United States*, No. 97-916, 1998 WL 668042, at *13 (D. Minn. July 16, 1998).

Even if amendment might prejudice a defendant but there is good reason for the delay, the Court may exercise its discretion to allow the amendment. This is not the case here. The Kaplans have been aware since at least 2010 that medical battery was an available claim they could bring, as evidenced by their arguments on appeal about Dr. Nagorney's alleged promise. Appellants' Br. at 65-66,[2] *Kaplan v. Mayo Clinic*, No. 10-2290 (8th Cir. Aug. 16, 2010) ("Dr. Nagorney promised that he would do one thing, and **like a battering physician**, then did another." (emphasis added)). The Kaplans have been aware from the outset of this litigation of the evidence they now cite as support for a battery claim, and they offer no reason to justify this substantial delay in seeking leave to amend their complaint.

---

[2] Internal pagination.

The Kaplans' proposed amendment falls outside the scope of the Eighth Circuit's narrow remand and would likely prejudice the Defendants, with no good reason for the delay in seeking amendment. Because the Court concludes that granting leave to amend at this stage "would constitute trial-by-ambush, that is neither contemplated, nor countenanced, by Rule 15(b)," the Court will deny the Kaplans' motion to amend their complaint. *Beattie*, 1998 WL 668042, at *13.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the Plaintiffs' Motion for Leave to Amend [Docket No. 371] is **DENIED**.

DATED:  April 10, 2015  
at Minneapolis, Minnesota.

_____s/ John R. Tunheim_____  
JOHN R. TUNHEIM  
United States District Judge